5:23MJ1169-AMK

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Adam Nicholas Gallegos, a Special Agent (S/A) with Homeland Security Investigations, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint for **Ka'andre Dierre Marsean HARRIS,** herein after referred to as "**HARRIS**".

2. I am a Special Agent with the United States Department of Homeland Security (DHS), Homeland Security Investigations ("HSI"), and have been since February 2020. I am currently assigned to the Cleveland, Ohio Field Office.

3. As part of my daily duties as an HSI Special Agent, my responsibilities include the investigation of criminal violations related to drug trafficking, in violation of Title 18, United States Code Section 922(o) (Possession or Transfer of a Machinegun) and 545 (Smuggling Goods into the United States). I have also received training and have conducted and/or assisted in investigations involving the violation of laws pertaining to drug trafficking, bulk cash smuggling, money laundering, gangs, firearms, human trafficking, and child exploitation. I am a graduate of the Criminal Investigator Training Program and the HSI Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, GA. Prior to my career as an HSI Special Agent, I was employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") as an Intelligence Research Specialist. I was employed with ATF since October of 2016.

4. Pursuant to the Homeland Security Act of 2002, I am empowered to enforce criminal laws of the United States. As such, through my training and experience I am familiar with federal

criminal laws, including 18 U.S.C. § 545, Smuggling of Goods into the United States, to wit, unregistered firearms, and 18 U.S.C. § 922(o), Illegal Transfer and Sale of Machineguns.

5. As a result, I am experienced in the means and methods used by persons and drug trafficking organizations to purchase, transport, store, and distribute contraband and the means and methods used to hide profits generated from those transactions. I am also familiar and experienced in the means and methods of those engaged in or seek to engage in a conspiracy involving drug trafficking. I have written and/or participated in the execution of federal search and arrest warrants involving drug trafficking, violent crime, child exploitation, human trafficking, and the use and trafficking of narcotics and narcotics smuggling.

6. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7) and am authorized under the Federal Rules of Criminal Procedure, Rule 41, to conduct investigations and request an arrest warrant.

7. The statements contained in this affidavit are based upon my personal knowledge and observations, my training and experience, conversations with other law enforcement officers and witnesses, and the review of documents and records. As such, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause for an order authorizing the arrest of **HARRIS**.

8. I submit the facts set forth above establish probable cause to believe that in the State and District of Northern Ohio on or about June 13, 2023, the defendant **Ka'andre Dierre Marsean HARRIS**, smuggled goods into the United States, to wit an unregistered firearm, in violation of 18 U.S.C. § 545, and illegally transferred and purchased a machine gun, in violation of 18 U.S.C. § 922(o), and conspired to do the same.

## BACKGROUND OF INVESTIGATION

9. On or about May 28, 2023, CBP officers at the John F. Kennedy International Airport (JKF) located in New York, New York, identified and examined an international parcel sent from China to Ohio. The shipper of the parcel was listed as "Beijing Yanwen Logistics Co LTD" and the consignee (recipient) was listed as "Dre Harris" with an address of **7830 Peachmont Ave, North Canton, Ohio**" (the **TARGET PREMISES**). The parcel is hereinafter referred to as the "**Subject Parcel 1**". **Subject Parcel 1** was manifested as "decorations."

10. Pursuant to their legal authority to open and examine parcels imported into the United States, CBP officers examined **Subject Parcel 1** and found it to contain one (1) suspected Glock switch. Based on a prior ATF determination and past CBP seizures, CBP determined the subject pistol selector switch parts to be firearm parts from China and prohibited importation; defense articles being imported from China are prohibited under 447.52(a) of the Arms Export Control Act.

11. Ultimately, the **Subject Parcel 1** was transferred to the HSI Cleveland Office for further investigation.

12. In furtherance of Glock Auto Switch investigations, S/A Michael Thomas with HSI Cleveland has also consulted with ATF S/A Joshua Snyder. S/A Snyder provided HSI Cleveland with a copy of an ATF technical bulletin discussing Glock switches. The following pictures of illegal Glock switches were in the ATF bulletin provided by S/A Snyder:





**GLT Glock Selector Switch - Fully Assembled**

13. For comparison, below are photographs of the Glock switch seized from the **<u>Subject Parcel</u>** addressed to the <u>Target Premises</u>:

 

14. Note that the Glock switch from the **<u>Subject Parcel 1</u>** bears the Glock insignia and state "Made in Austria," even though the parcel was sent from China. (Your Affiant knows that no legitimate Glocks are manufactured in China).

15. CBP records indicate that "Dre Harris" at the **<u>TARGET PREMISES</u>** has been the consignee (recipient) of multiple international parcel shipments from China, all in the month of May. These parcels were not intercepted and were, therefore, presumably delivered. Additionally, "Beijing Yanwen Logistics Co LTD" is a known shipper of firearm auto sears, often with the cargo description of "decorations". Based off training and experience, your Affiant knows that such manufacturers and shippers of prohibited firearms are known to falsely label their goods in order to avoid detection and circumvent law enforcement.

16. Your affiant conducted law enforcement queries on any "Dre Harris" that may reside at the **TARGET PREMISES**. One such query was able to identify a **Kaandre HARRIS** that has been known to reside at the **TARGET PREMISES**.

17. On or about June 1, 2023, your Affiant was informed that another shipment, **Subject Parcel 2**, inbound from China was held by CBP JFK, with the consignee (recipient) listed as "Dre Harris" at the **TARGET PREMISES**. According to records, **Subject Parcel 2** was manifested as a "badge". Due to the prior seizure discussed previously in this affidavit, your Affiant requested that CBP utilize legal authority to conduct an inspection on the parcel.

18. On June 5, 2023, CBP informed your affiant that **Subject Parcel 2's** contents contained 1 suspected Glock switch. Based on prior ATF determination and past CBP seizures, CBP determined the subject pistol selector switch parts to be firearm parts from China and prohibited importation; defense articles being imported from China are prohibited under 447.52(a) of the Arms Export Control Act.

19. Ultimately, the subject parcel and its contents were transferred to the HSI Cleveland Office for further investigation.

20. For comparison, below are photographs of the Glock switch seized from **Subject Parcel 2** addressed to the **Target Premises**:

 

21. On June 6, 2023, ATF S/A Jason Petaccio was asked to inspect photos of the devices recovered from both **Subject Parcel 1** and **Subject Parcel 2**. S/A Petaccio, in the course of his official duties, has, on numerous occasions, inspected, tested and/or fired Glock brand handguns. Based on his training and experience, S/A Petaccio stated the seized devices are consistent with devices that allow a Glock firearm to fire more than one round with a single pull of the trigger.

22. On June 6, 2023, your Affiant and HSI S/A Gabriel Pedrego conducted surveillance of the **TARGET PREMISES**. While doing so, they discovered the residence to be a two-story apartment building. Affiant and S/A Pedrego were unable to enter the building due to it being locked and only accessible via an electronic "swipe" mechanism. On either side of the glass door are two windowpanes. On the right side of the glass door is a "call" type feature bearing

a list of the apartments. Unit F7 bears the name "CULVER". Your Affiant knows a female by the name of "Erin Culver" to reside at the **TARGET PREMISES** in Unit F7.

23. Further, while at the scene of the **TARGET PREMISES**, your Affiant observed a detached garage with multiple carports under their respective unit numbers, coinciding with the residential unit they are assigned to. Attached to the side of the garage are multiple mailboxes. One such mailbox is listed as Unit F7 and bears the name "CULVER" and "HARRIS". Therefore, based on the findings in paragraphs twenty-seven (27) and twenty-eight (28), there is a "HARRIS" that resides at the **TARGET PREMISES**.

24. On June 7, 2023, your Affiant and S/A Pedrego again conducted surveillance on the **TARGET PREMISES**. Your Affiant was able to enter the building and observed a long hallway to the immediate left of a staircase leading to the second-floor landing. At the immediate top of the staircase on the second-floor landing, to the immediate right, is a blue door marked clearly with the number "7" on the left-hand side of the door. Your Affiant determined that this is F7 and is the **TARGET PREMISES**.

25. Based on the above information including the opinion of CBP, S/A Petaccio, your Affiant's own comparison of the photograph above to the photograph of known Glock switches, and the fact that the **Subject Parcel 1** was falsely manifested as a "decorations," and **Subject Parcel 2** was falsely manifested as a "badge", your Affiant believes that the item in both **Subject Parcel 1** and **Subject Parcel 2** are Glock switches, and therefore are prohibited machineguns under federal law.[1]

---

[1] Your Affiant would note that a more conclusive determination about whether an item is a "machinegun" is typically made by the ATF lab after a full in-person inspection and analysis. But similar to drug investigations—in which agents cannot reasonably obtain formal drug chemistry lab results prior to obtaining a search warrant and must instead rely on their training and experience to identify drugs under a probable cause standard, due to time constraints—

26. As such, Affiant, HSI Cleveland, ATF Cleveland, and other law enforcement officers conducted a controlled delivery of **Subject Parcel 2**, including the Glock switch, to the **TARGET PREMISES** on or about June 13, 2023. While on scene, the undercover United States Postal Inspector (USPIS) placed **Subject Parcel 2** into a mailbox clearly marked "F7". This mailbox had previously been identified as the mailbox corresponding to the **TARGET PREMISES** by your Affiant.

27. Your Affiant, along with other law enforcement officers observed a black male that was identified as **HARRIS** enter the parking lot in a blue Kia Sorrento bearing Ohio license plate FNA5569 (**Vehicle**). Your Affiant observed **HARRIS** exit the passenger seat of the **Vehicle** and approach the mailbox where **Subject Parcel 2** was located. **HARRIS** was observed entering the **TARGET PREMISES** and reemerged a few minutes later. **HARRIS** then retrieved **Subject Parcel 2** and re-entered the **Vehicle**.

28. Your Affiant, along with other law enforcement officers, maintained continuous surveillance of the **Vehicle** while it traveled from the **TARGET PREMISES** to the Keybank in North Canton, Ohio. From there, the **Vehicle** then traveled to the Aldi grocery store, also located in North Canton, Ohio. There, **HARRIS** and an unknown black male exited the **Vehicle** and entered the Aldi. During this time, your Affiant maintained continuous tones and motion alerts, indicating that **Subject Parcel 2** was still located inside the **Vehicle**. Approximately ten (10) minutes later, both **HARRIS** and the unknown black male reentered the **Vehicle** and departed the Aldi.

---

agents in this case cannot reasonably obtain a formal ATF lab determination prior to conducting enforcement action. Agents in this case must instead rely on their training and experience, and the preliminary opinions of trained personnel familiar with Glock switches.

29. Your Affiant, along with other law enforcement officers, maintained continuous surveillance of the **Vehicle** until it parked at 8225 Sharon Ave NW, North Canton, OH 44720 (hereinafter referred to as **TARGET PREMISES 2)**. **HARRIS** exited the **Vehicle** and entered **TARGET PREMISES 2**. Approximately five (5) minutes later, your Affiant received continuous motion alerts and "light detected", meaning that the parcel was opened in **TARGET PREMISES 2**.

30. At that time, your Affiant and other law enforcement officers then knocked on the door to announce law enforcement presence. The door to **TARGET PREMISES 2** was immediately opened by **HARRIS**. **HARRIS** was immediately detained. Your Affiant and other law enforcement officers secured **TARGET PREMISES 2** to deem it safe to conduct a search.

31. Your Affiant attempted to have a conversation with **HARRIS** who admitted to purchasing a Glock switch from "DH Gate". **HARRIS** admitted to searching for "CNC Automatic Selectors" on the "DH Gate" application installed on his mobile device (iPhone). When asked why he was attempting to order a Glock switch, **HARRIS** stated that he wanted to see if they "worked". **HARRIS** admitted to having attempted to purchase another Glock switch but he believed it to have been lost in the mail. **HARRIS** then granted your Affiant consent to search through his iPhone. **HARRIS** directed your Affiant to a messaging thread where he was communicating with the seller of the switches and inquiring about when the switch would be delivered. Your Affiant then ended the conversation and walked outside.

32. Shortly thereafter, your Affiant was informed by other law enforcement, to include an ATF agent, that **HARRIS** became physically and verbally combative. **HARRIS** ignored clear and articulable commands to stop moving and continued to move to enter his backpack and his

pockets. It was then found that there was a loaded Glock pistol in his backpack, to which he had brought inside **TARGET PREMISES 2**.

## CONCLUSION

33. I submit the facts set forth above establish probable cause to believe that in the State and District of Northern Ohio on or about June 13, 2023, the defendant, **Ka'andre Dierre Marsean HARRIS**, smuggled goods into the United States, to wit an unregistered firearm, in violation of 18 U.S.C. § 545, and illegally transferred and purchased a machine gun, in violation of 18 U.S.C. § 922(o), and conspired to do the same. Accordingly, I request the issuance of a criminal complaint and arrest warrant.

Respectfully Submitted,

Adam Nicholas Gallegos
Special Agent
Homeland Security Investigations

Sworn to via telephone after submission by reliable electronic means [Fed. R. Crim. P. 4.1 and 41(d)(3)] on this 14th day of June.

AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE